UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUY HAYMON                              )
          Plaintiff                     )
                           )
          v.                            )          Civil Action No. 21-cv-886 (RDM)
                           )
DISTRICT OF COLUMBIA, et al.            )
          Defendants                    )
_____ )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Guy Haymon, by and through counsel, hereby opposes Defendants'

Motion for Summary Judgment. In support of said opposition, Plaintiff states as follows.

1.      Plaintiff was defamed pursuant to the false stated basis for the revocation of his

      SPO commission.

2.      There was sufficient publication of the foregoing pursuant to District Government

      personnel policies.

3.      Plaintiff stated a valid Reputation-Plus claim.

4.      Plaintiff stated a valid Stigma-Plus claim.

      In further support of this opposition to said  motion, Plaintiff  refers the Court to

the memorandum of points and authorities attached hereto and incorporated herein by

reference.

                        Respectfully submitted,

                        /s/ John F. Pressley, Jr.

                        _____

                        John F. Pressley, Jr., #379716
                        11005 John Paul Jones Avenue

(202)723-8800
jfpressley@verizon.net
Attorney for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiff's Opposition to Defendants'

Motion for Summary Judgment was electronically filed and served this __20th__ day of

January, 2024 on:

Steven N. Rubenstein
Rachel B. Gale
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001

/s/ John F. Pressley, Jr.
_____

John. F. Pressley, Jr.

ii

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Motion for Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     DEFENDANTS' ARGUMENTS LACK FUNDAMENTAL LEGAL MERIT . . . . . . . . . 4

       A.     Reputation-Plus Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     District Government Policy Regarding Dissemination of Personnel
              Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       C.     Stigma-Plus Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.   PLAINTIFF HAS A VALID TORTIOUS INTERFERENCE CLAIM . . . . . . . . 10

       A. Tortious Interference with Prospective Advantage . . . . . . . . . . . . . . . . . . 10

       B. Each Element Has Been Established in This Case . . . . . . . . . . . . . . . . . . . 10

       C. The Police Report Complies with D.C. Code § 12-309 Notice . . . . . . . . . . . . 13

V.     THERE IS A MULTITUDE OF MATERIAL FACTS IN DISPUTE . . . . . . . . . 16

iii

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GUY HAYMON | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-886 (RDM) |
| | ) | |
| DISTRICT OF COLUMBIA, et al. | ) | |
| Defendants | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Preliminary Statement

Five  years ago the Plaintiff, Guy Haymon, embarked on what he hoped to be a career as a Special Police Officer (SPO). The licensing of Special Police officers in the District of Columbia is handled by the Metropolitan Police Department (MPD) which designated full authority to issue SPO licenses to the Security Officers Management Branch (SOMB), an agency within the MPD.

On May 19, 2019 Mr. Haymon was working as an SPO at his assigned location at the Giant Super Market at 1535 Alabama Avenue, S.E. At the time, Mr. Haymon who had completed MPD firearm Range Certification, believed that he was authorized as an armed SPO. In accord with that believe, he was provided with a firearm by the agency for which he worked.

Without warning, shots rang out in the Giant parking lot. Mr. Haymon, after realizing what was happening and that the lives of innocent shoppers were at stake, he located the shooter and returned the gun fire, putting his own life in jeopardy. The shooter

soon retreated and left the scene. Thanks to Mr. Haymon's response, no one was killed, no one was injured.

In light of the exchange of gun fire, an initial investigation was initiated by the MPD Seventh District Police precinct. The investigation concluded that Mr. Haymon's use of his firearm was justified and that Mr. Haymon had acted responsibly in defending the shoppers and himself and preventing the loss of life and injury. Staff from the SOMB, including Sgt. Jeffrey McGunigal responded to the scene and were privy to the Seventh District investigation and the conclusion of that investigation. Subsequently, an Assistant U.S. Attorney also reached a similar conclusion and declined against any charges against Mr. Haymon in conjunction with the shooting incident.

Despite the heroic action of Mr. Haymon in preventing any injury or loss of life during the shooting incident and the subsequent investigation and conclusions, defendant Sgt. Jeffrey McGunigal summarily revoked Mr. Haymon's SPO commission without any prior notice, hearing or explanation. To add insult to injury, the SOMB Special Police Commission Revocation form used by Sgt. McGunigal stated the reason for revocation as "Unlawful Discharge of Firearm". Pursuant to D.C. Code § 22-4503.01 "unlawful discharge of a firearm" is a crime, "[e]xcept as otherwise permitted by law, including legitimate self-defense . . ." (emphasis added).

As a result of the revocation, Mr. Haymon found himself without a job, unable to pursue his chosen career with a record appearing to criminally accuse him of discharging

his firearm "unlawfully". Subsequent to the revocation of his SPO commission, Mr.

Haymon vis-a-vis his contact with defendant McGunigal, was not accorded any avenue

for appeal of the revocation nor was he allowed to submit an SPO license renewal

application.

In the mean time, the key investigation was initiated. ostensibly by the MPD

Internal Affairs Division (IAD). As it turned out, defendant McGunigal was provided a

draft copy of the IAD report prior to its release. Also, the final IAD report was signed by

Sgt. Fulvia Brooks, who coincidentally happened to be a colleague of defendant

McGunigal at the SOMB. The IAD report was completed and signed off on June 13,

2019, roughly a month after the shooting incident. Despite the conclusion of the report

defendant McGunigal as the ostensible contact person for Mr. Haymon utterly failed to

communicate with Mr. Haymon who was callously told nothing as his District of

Columbia SPO career languished. He did not find out about the completion of the IAD

report until MPD was compelled to provide it two years later, pursuant to the filing of the

motion to dismiss.

<u>MOTION FOR SUMMARY JUDGMENT STANDARD</u>

A court may grant summary judgment when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(a). A "material" fact is one capable of affecting the substantive

outcome of the litigation. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. See Greene v. Dalton, 164 F.3d 671, 675 (D.C.Cir.1999). the non-movant. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. See Fed.R.Civ.P. 56(c)(1); Celotex, 477 U.S. at 323, 106 S.Ct. 2548. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548. In considering a motion for summary judgment, a court must avoid "making credibility determinations," Czekalski v. Peters, 475 F.3d 360, 363 (D.C.Cir.2007), and analyze all underlying facts and inferences in the light most favorable to the non-movant, see Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

## **ARGUMENT**

**I.**   PLAINTIFF ESTABLISHED VALID REPUTATION-PLUS AND STIGMA PLUS CLAIMS

Defendants begin their Argument stating that due process "merely ensures that the procedures that led to such an outcome are fair." Mot., p. 11. The treatment of Mr.

Haymon was anything but fair. Defendants next address the municipal policy overlooking the effect that result from final decision makers, such as defendant McGunigal in the instant case. Moreover, their mention of respondeat superior has nothing to do with this case. All of these introductory statements are without relevance or merit.

Defendants next conclusively state that Plaintiff cannot state Plaintiff cannot establish that he was deprived of a constitutionally protected liberty interest, notwithstanding the analysis and clear conclusions of the court in the motion to dismiss phase of this case. Defendants nest argue that the revocation of Plaintiff's Special Police License did not result in an adverse employment action.

Defendants next argue that "he cannot show that he was defamed when his SPO powers or his commission were revoked." Mot., p. 13. It is of course clear that it was defamatory was defamatory to be accused of a crime when, in actually, Mr. Haymon was saving lives and the statute clearly states that the discharge of a firearm was not applicable when done in self-defense. Accordingly, contrary to Defendants allegation, the Form 77 "duty status form" implying that the Mr. Haymon was culpable for the discharge was indeed "false. And so it goes. The key documents attached to this opposition state in more detail the actual facts and factual disputes.

A.    Reputation-Plus Claim

A reputation-plus liberty claim requires the "conjunction of official defamation and [an] adverse employment action." O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C.

Cir. 1998). To plead such a claim, a plaintiff must show "that the government's defamation resulted in a harm to some interest beyond reputation," such as a "loss of present . . . government employment," where the "government has actually stigmatized his . . . reputation," and "the stigma has hampered future employment prospects." Jefferson v. Harris, 170 F.Supp.3d 194, 205 (D.D.C. 2016).

Although a reputation-plus claim can clearly apply to government employees if the requisite circumstances pertain. This in no way, however, means that this is the only basis upon which the theory applies. It is well-established that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts" of the Due Process Clause of the Constitution. Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959)(emphasis added). See Leis v. Flynt, 439 U.S. 438, 452 n. 17, 99 S.Ct. 698, 706 n. 17, 58 L.Ed.2d 717 (1979) (Stevens, J., dissenting); Willner v. Committee on Character and Fitness, 373 U.S. 96, 102–03, 83 S.Ct. 1175, 1179–1180, 10 L.Ed.2d 224 (1963); Schware v. Board of Bar Examiners, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–756, 1 L.Ed.2d 796 (1957); Woods v. District of Columbia Nurses' Examining Board, D.C.App., 436 A.2d 369, 382 (1981).

To make the point even more specifically with respect to the fact that constitutional liberty claims are not limited to government employees, there have been a number of cases specifically dealing with the private employment of Special Police

officers and the subsequent revocation of their Special Police license[1] . See <u>Harris</u>
<u>v. D.C.</u>, 696 F. Supp. 2d 123, 134 (D.D.C. 2010) (§ 1983 claim for deprivation of a
property interest, stemming from revocation of his authority to work as a Special Police
Officer); <u>Minto v. Connecticut State Police</u>, No. 3:14-CV-00747 (VLB), 2015 WL
5822596, at *12–13 (D. Conn. Sept. 30, 2015)(allegations relating to revocation of
special police identification card appear to state a procedural due process claim<u>); Fusco</u>
<u>v. Motto</u>, 649 F. Supp. 1486, 1488-91 (D. Conn. 1986) (deprivation of an individual's
police powers and his subsequent dismissal, which would require an explanation in the
application for similar government and other employment, was a blemish on his resume
likely to place him in a negative light with law enforcement agencies, and thus
implicated his liberty interests); <u>Small v. Inhabitants of City of Belfast</u>, 796 F.2d 544 (1st
Cir. 1986) (Maine statutes created property interest in security guard's appointment as
special police officer which could not be revoked by city without required notice or
hearing).

     <u>Disclosure</u>. The District of Columbia Circuit Court of Appeals has stated that
"[t]he 'public disclosure' requirement would also be satisfied if the Department placed . .
[one's] termination memorandum in her personnel file and made that file available, even
on a limited basis, to prospective employers or government officials." <u>Doe v. U.S. Dep't</u>

---

     [1]  Special Police licenses are issued by the government, but the officers are not
government employees. They are limited to employment by private security companies.
Plaintiff was in the employ of the Washington Field Protection Service, a fact well known
to Defendants.

of Just., 753 F.2d 1092, 1113, n. 24 (D.C. Cir. 1985) (emphasis added)[2]. In the instant case, the Plaintiff's record with the Metropolitan Police Department (MPD) Security Officers Management Branch (SOMB) is tantamount to a personnel file. Plaintiff's file, as indicated in Defendants' Exhibit No. 3 (Final Investigative Report), has been disclosed to an entire range of government officials. These government officials include, but are not limited to the SOMB, the MPD Risk Management Division, and the MPD Internal Affairs Bureau.

   B.   District Government Policy Regarding Dissemination of Personnel Records

   It is important to point out the following District of Columbia government policy with respect the dissemination of personnel records. District of Columbia Municipal Regulation 6-B DCMR §3102.1 provides as follows,

   **3102.1**   It shall be the policy of the District Government to make personnel

---

[2] The court also pointed out that it was appropriate to recall a statement by the Seventh Circuit in a similar case:

The [government] points out that its findings will not be made public and are available to the various agencies only on a need to know basis. However, the federal government is composed of many different agencies and departments, all of which could obtain the information under various circumstances. In effect, [the plaintiff] has been stigmatized throughout the entire federal government. [S]he is deprived of the opportunity to work in any capacity for any branch of the government.

Larry v. Lawler, 605 F.2d 954, 958 (7th Cir.1978)(emphasis added); see also Old Dominion Dairy Products, Inc. v. Secretary of Defense, 631 F.2d 953, 966 (D.C.Cir. 1980)(quoting Larry). In the instant case, the Plaintiff has been stigmatized throughout the MPD, in particular with respect to individuals who control whether he ever obtains another SPO license and is able to pursue a career as a Special Police officer.

information in its possession or under its control available upon request to appropriate personnel and law enforcement authorities, except if such disclosure would constitute an unwarranted invasion of personal privacy or is prohibited by law or regulation.

Additionally, District of Columbia Municipal Regulation 6-B DCMR §3102.1 provides as follows,

**3102.13**   Personnel records subject to these regulations may be disclosed to all Personnel Authorities (emphasis added).

Pursuant to 6-B DCMR §3102.2 "Personnel Authorities" is defind as follows:

**6-B DCMR §3102.2**   "Personnel Authority" means an individual with the authority to administer all or a portion of a personnel management program, including:

a.  The chain of command extending from the employee's immediate supervisor through the Mayor or an Independent Personnel Authority, as defined in subsection 3103.3 of this chapter; and
b.  Personnel staff which services the employee's agency.

As a result, pursuant to D.C. Circuit interpretation, the "public disclosure" requirement has been met given the very broad dissemination provided by the District of Columbia's own policy.

C.    Stigma-Plus Claim

Unlike a reputation-plus claim, the stigma-plus theory "does not depend on official speech, but on a continuing stigma or disability arising from official action." O'Donnell, 148 F.3d at 1140. To allege a violation under this approach, moreover, a plaintiff must show that the official action not only "hampered" his future employment,

9

but in fact "had the 'broad effect of largely precluding [him] from pursuing [his] chosen

career.' " Kartseva v. Dep't of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994)).

     Foreclosure of Employment. As stated in the Complaint that "Mr. Haymon has

been unable to work as an SPO without his license, he has been precluded from his

pursuing his career and employment as an SPO as a direct consequence of his defamatory

laden license revocation." Dkt. 1-2 at 9 (Compl. ¶ 40). Plaintiff also declared that "Mr.

Haymon was never accorded an opportunity to submit a renewal application." Dkt. 1-2 at

9-10 (Compl.  ¶ 40).

## II.   PLAINTIFF HAS A VALID TORTIOUS INTERFERENCE CLAIM

### A.   Tortious Interference with Prospective Advantage

     The elements of tortious interference with prospective business advantage mirror

those of interference with contract. Casco Marina Dev., L.L.C. v. D.C. Redevelopment

Land Agency, 834 A.2d 77, 83 (D.C. 2003). To prevail, however, a plaintiff obviously

need not demonstrate the existence of a contract, but merely a prospective advantageous

business transaction. The elements of tortious interference with contract are: "(1) the

existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a

breach of the contract; and (4) damages resulting from the breach." Paul v. Howard Univ.,

754 A.2d 297, 309 (D.C. 2000) (footnote and citation omitted).

### B.   Each Element Has Been Established in This Case

     As noted, infra, the elements of tortious interference with prospective advantage

mirror those of interference with contract. To prevail, however, a plaintiff obviously need not demonstrate the existence of a contract, but merely a prospective advantageous transaction. Accordingly, the elements which must be addressed relating to a motion to dismiss are: (1) the existence of a prospective advantage; (2) knowledge of the prospective advantage; (3) intentional interference with prospective advantage; and (4) damages resulting from the Interference.

The existence of a prospective advantage and Defendant McGunigal's knowledge of said prospective advantage was referenced not only by the fact that Mr. Haymon was employed at the time of his license revocation, but also in reference to the fact, indicated in the Complaint, that Mr. Haymon wanted to submit a renewal SPO application, but was not allowed to do so by Defendant McGunigal. Exh. No.1, Haymon Declaration. Dkt. 1-2 at 9-10, 11, 12 (Compl. ¶¶ 41, 48, 55). Moreover, Special Police officers work only "in connection with te property of, or under the charge of, such corporation or individual . . ." D.C. Code § 5-129.02[3], 6A DCMR § 1105.1. The Plaintiff was ready and able to continue his work with the Washington Field Protection Service, the agency for which he previously worked and which wanted him to return to work as an SPO. With respect to the third element, Defendant McGunigal never communicated with Mr. Haymon to provide information regarding how Mr. Haymon could proceed to renew his SPO commission. Dkt. 1-2 at 9-10, 11, 12 (Compl. ¶¶ 41, 48, 55).

---

[3] Formerly cited as D.C. Code § 4-114 (1981 ed.).

11

The documentation previously provided by the Defendants as part of their Motion to Dismiss[4] provides evidence in bold relief of the callous intention of Defendant McGunigal. The investigation by the Internal Affairs Bureau was completed three (3) weeks after the shooting incident at the Giant Supermarket parking lot, yet two years later, Sgt. McGunigal has intentionally failed to apprise Mr. Haymon of the Internal Affairs Bureau report or its conclusion. Dkt. 1-2 at 12 (Compl. ¶ 58)[5]. This blatant and irresponsible and intentional dereliction of duty alone was clear evidence of Sgt. McGunigal's desire and purpose to interfere with Mr. Haymon's prospective employment opportunity and to ensure that he would not be able to assert any basic rights pursuant to the common law or the Fifth Amendment.

Because of Sgt. McGunigal's callous failure to relate any information to Mr. Haymon, he never had the opportunity to defend himself or clear up any discrepancy or clear his name. Finally, Defendant McGunigal was fully aware of the damages sustained by Mr. Haymon's inability to work as an SPO without a commission. Dkt. 1-2 at 12, 13 (Compl. ¶ 57, 60). It is thus absolutely clear that Mr. Haymon has fully established a valid Tortious Interference with Prospective Advantage claim.

---

[4] Incorporated by reference.

[5] Indeed, Mr. Haymon may not have ever found out about the Internal Affairs Bureau report, but for the instant lawsuit. As it clearly looks like they intended to brush this matter under the proverbial rug.

D.    <u>The Police Report Complies with D.C. Code § 12-309 Notice</u>

The Defendants argue that "[p]laintiff's failure to provide statutory notice under D.C.

Code § 12-309 before filing the Complaint forecloses his tort claim against the District."

Dkt. 10 at 19. Defendants, however, completely ignore the fact that the statute clearly

provides that "[a] report in writing by the Metropolitan Police Department, in regular

course of duty, is a sufficient notice under this section." D.C. Code § 12-309. All that is

required is that the police report contain the same information that is required in any other

notice given under the statute. <u>Campbell v. District of Columbia</u>, 568 A.2d 1076,

1078–1079 (D.C. 1990). "The police report is an alternative form of notice added to

'(take) care of those instances in which actual notice is had by the District of Columbia

from the police department, although technical notice may not have been filed by the

person injured.' " <u>Miller v. Spencer</u>, 330 A.2d 250, 252 (D.C.App.1974), quoting

H.R.Rep.No.2010, 72d Cong., 2d Sess. 2 (1933).

    A notice is sufficient "if it recites facts from which it could be reasonably

anticipated that a claim against the District might arise." <u>Pitts v. District of Columbia</u>,

391 A.2d 803, 809 (D.C. 1978). "Such notice would suffice, therefore, if it . . . described

the injuring event with sufficient detail to reveal, in itself, a basis for the District's

potential liability." <u>Washington v. District of Columbia</u>, 429 A.2d 1362, 1366 (D.C.

1981) (en banc).

    In order to determine whether or not the requirement of notice pursuant to D.C.

Code § 12-309 are met pursuant to the alternative means of a police report, the issue of the basis for liability and damages or injury must be addressed directly. In the instant case the cause of action relates to a cause of action for tortious interference with prospective advantage. In other words, simply put, the Plaintiff alleges that a District of Columbia employee, working within the scope of his employment with the District of Columbia interfered with the Plaintiff's ability to earn a livelihood. The cause was a summary revocation of his Special Police officer license. Without this license, Plaintiff's life and future (i.e. his prospective advantages) were doomed.

This reality, in turn, begs the question as to how this travesty came to be and was it justified under the circumstances. First, this requires an assessment of how the revocation came about. It resulted simply as the result of the Plaintiff intervening in a shooting incident whereby he returned fire from a shooter firing his firearm at innocent shoppers in a parking lot. The shooter retreated and left the scene as a result of the Plaintiff's intervention. The result was no lives were lost and no one was injured. Under normal circumstances, the Plaintiff would be considered a hero. Indeed, the incident was investigated by the Seventh District Police precinct and was found to be justified. The unusual circumstances, however, in the instant case resulted in the Plaintiff having his license revoked on the basis that he engaged in an "unlawful discharge of [his] firearm". In an instant, the Plaintiff's world was turned around. The damage associated with such a turn of events was manifest and begged the question as to why and what can be done.

14

Subsequent to the Plaintiff's loss of his employment and the disparagement of his reputation, there was further investigation by the Internal Affairs Bureau (IAB). This police investigation took place immediately after the shooting incident. It was completed in roughly three (3) weeks. It concluded, inter alia, that the Plaintiff "discharged his firearm to protect life". The recommendation was that the use of force be classified as Justified, with Police Violation. As a result of this finding it was recommended that the Plaintiff's SPO commission be Indefinitely Revoked.

Pursuant to D.C. Code § 12-309, one is required to consider the circumstances under which the damages occurred. In this particular situation the damages to the Plaintiff were compounded – unnecessarily. Although the IAB investigation and report was completed three (3) weeks after the shooting incident, the Plaintiff was never told or informed as to the outcome of the investigation. He only found out as a result of the instant lawsuit being filed. As a result, he was not accorded any due process which would allow him to contain his damages. He needed and wanted his SPO license. Although he inquired of the Defendant, the former Sgt. McGunigal as to what was going on, said Sgt. McGunigal callously indicated that he had to wait for completion of the IAB report when it had already been completed. It should also be pointed out that the version of the report was prodigiously redacted. It is not known what information came out in the report. As indicated, infra, it also appears that an important document was altered to delete information indicative of the fact that the Plaintiff was, in fact, duly licensed as an

15

"armed" officer. This entire incident provides more than enough information to comply with D.C. Code § 12-309. After all, Section 12-309 simply requires that notice be given regarding the "place, cause, and circumstances of the injury or damage". This was done pursuant to the investigation and report.

Moreover, this case presents the question as to why there should not be a waiver of Section 12-309 pursuant the egregious, callous and disingenuous failure of Defendant McGunigal to properly inform the Plaintiff of the result of the investigation. This in itself is atrocious. Contrary to Defendants contentions, the undisputed facts do more than indicate that "Defendant McGunigal acted with improper intent to harm Plaintiff's prospective business expectancies . . . Nor does it [the report] provide the District with any indication of Plaintiff's purported injuries from the revocation." Dkt. At 21. Such allegations are preposterous. Indeed, the fact that the Plaintiff has not been able to work as an SPO without a license is self-evident and obvious. The fact that Defendant McGunigal blatantly failed to be truthful and honest with the Plaintiff, failing to even let him know that the report had been produced, this was intentional and also obvious.

## III.   THERE IS A MULTITUDE OF MATERIAL FACTS IN DISPUTE

As pointed out previously in the Motion for Summary Judgment Standard section, a  court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In the instant case material facts in dispute abound. As a result, the

defendants are not entitled to summary judgment on those grounds alone. The key

disputed material facts are stated in the attached Exhibits (Nos. 1, 2 and 3), including 1)

Mr. Haymon's Declaration, 2) the Plaintiff's Statement of Material Facts in Dispute, and

3) Plaintiff's Response to Defendants' Statement of Material Facts.


Respectfully submitted,

/s/ John F. Pressley, Jr.

_____
John F. Pressley, Jr., #379716
11005 John Paul Jones Avenue
(202)723-8800
jfpressley@verizon.net
Attorney for Plaintiff


17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUY HAYMON　　　　　　　　　　)
　　　　　　Plaintiff　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　)　　　Civil Action No. 21-cv-886 (RDM)
　　　　　　　　　　　　　　　　　)
DISTRICT OF COLUMBIA, et al.　　　)
　　　　　　Defendants　　　　　　)
_____)

## **ORDER**

Upon full consideration of Defendants' Motion for Summary Judgment, the

complaint, the memorandum of points and authorities, and the record herein, and good

cause having been shown, it is, this _____ day of _____ , 2024,

ORDERED: That Defendants' Motion for Summary Judgment be, and the same

hereby, is DENIED, and it is further

ORDERED: That the case is retained on the court's docket.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Judge Randolph D. Moss
　　　　　　　　　　　　　　　　　　　　United States District Judge

Copies to counsel:
John F. Pressley, Jr.
Steven N. Rubenstein
Rachel B. Gale